UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SENNE BELETE,<br>            Plaintiff,<br>    v.<br>OAKS CORNER, et al.,<br>            Defendants. | Case No. 16-cv-04850-JCS<br><br>**ORDER REGARDING MOTION TO DISMISS**<br>Re: Dkt. No. 7 |

## I. INTRODUCTION

Plaintiff Senne Belete originally filed this action in state court, bringing several claims arising from the circumstances under which her supervisor, Defendant Brian Cadinha, terminated Belete's employment with Defendant Oaks Corner. Defendants removed to this Court and now move to dismiss three of Belete's state law tort claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the basis that those claims are barred by the applicable statutes of limitations under California law. The Court held a hearing on October 28, 2016. For the reasons stated below, Defendants' motion is GRANTED IN PART AND DENIED IN PART. Belete's fifth and sixth claims, for intentional infliction of emotion distress, are hereby DISMISSED WITH PREJUDICE.[1]

## II. BACKGROUND

### A. Facts Alleged

Belete worked as a waitress at Oaks Corner for more than two years. Compl. ¶¶ 2–3.[2] Cadinha was her supervisor at all relevant times. *Id.* ¶ 3. Throughout Belete's employment,

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).
[2] The Complaint appears in the record as an exhibit to Defendants' Notice of Removal, at pages 5 through 13 of document number 1-1.

Cadinha made "sexual remarks and advances," including telling Belete that he was in love with her, that she was beautiful, and that he was happy when he was around her. *Id.* ¶ 7. On March 1, 2013, Cadinha asked Belete to sit down and talk to him, and asked her why she liked working with him and whether she liked him. *Id.* Belete told him that she liked him platonically and thought of him as family, but did not like him sexually. *Id.* Cadinha became upset and told Belete that she should look for another job. *Id.*

A few days later, Cadinha called Belete to his office on Belete's day off and fired her, purportedly for a mistake she had recently made with a customer's order. *Id.* Belete alleges that this was a pretext, and that Cadinha in fact fired her for refusing his sexual advances, because such mistakes occur "all the time" and she and other employees had made similar mistakes before (presumably without being fired). *Id.*

At some point—how this fits into the sequence of Belete's termination is not clear from the Complaint—Cadinha accused Belete of stealing other employees' orders and said that she was a "thief." *Id.* ¶ 39. According to Belete, such statements were false, and Cadinha intended to "diminish [Belete's] reputation and injure [Belete] in her good name and employment." *Id.* ¶¶ 39–40.

Belete filed an administrative charge of discrimination with the California Department of Fair Employment and Housing ("DFEH") and with the Equal Employment Opportunity Commission ("EEOC") in October of 2013. *Id.* ¶ 8. The DFEH issued Belete a right-to-sue letter on November 5, 2013, indicating that the EEOC would be responsible for processing her administrative claim but that she could, if she chose, file a lawsuit under the California Fair Employment and Housing Act ("FEHA") in state court. *Id.* Ex. A. That letter also stated that the statute of limitations for Belete's FEHA claims would be tolled during the EEOC's investigations pursuant to section 12965(d)(1) of the California Government Code. Compl. Ex. A. The EEOC issued its own right-to-sue letter on April 7, 2016, stating that it was terminating its investigation and Belete could bring a civil action under Title VII of the Civil Rights Act of 1964. Compl. ¶ 8 & Ex. A.

Belete filed this action on June 30, 2016 in the California Superior Court for Alameda

County. *See generally id.* Her Complaint includes seven claims: (1) sex discrimination in violation of FEHA, *id.* ¶¶ 9–14; (2) sex discrimination in violation of Title VII, *id.* ¶¶ 15–17; (3) retaliation in violation of FEHA, *id.* ¶¶ 18–23; (4) retaliation in violation of Title VII, *id.* ¶¶ 24–27; (5) wrongful termination in violation of public policy, *id.* ¶¶ 28–32; (6) intentional infliction of emotional distress, *id.* ¶¶ 33–36; and (7) defamation, *id.* ¶¶ 37–42.

### B. Administrative Complaint

Belete attaches her administrative discrimination charge as an exhibit to her opposition brief. *See* Opp'n Ex. A. The Court takes judicial notice of the administrative charge under the incorporation by reference doctrine, as a document cited and relied on by the Complaint, the authenticity of which no party disputes. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

The administrative charge lists discrimination based on sex as the only basis for Belete's claim, and states that such discrimination most recently occurred on March 7, 2013. Opp'n Ex. A at 1. The field to indicate when discrimination first occurred is blank. *Id.* Belete's explanation of the facts begins with her conversation with Cadinha on March 1, 2013. *Id.* at 2. As in her present Complaint, Belete reported that Cadinha asked her if she liked him, she responded that she liked him but not sexually, and Cadinha became upset and suggested that she look for other work (specifically, at the Lucky Chance Casino in San Francisco). *Id.* Unlike her Complaint, the administrative charge states that Cadinha concluded the conversation by telling Belete that he was "going to fire someone," and Belete responded that she hoped it would not be her. *Id.*

Like the Complaint, the administrative charge states that Cadinha called Belete to his office for a meeting on her day off. *Id.* According to the administrative charge, the Oaks Corner chef was also present for that meeting. *Id.* Cadinha and the chef told Belete that she was fired for taking the wrong food from the kitchen the week before. *Id.* Belete tried to explain herself—apparently her mistake resulted from a change to the menu, and such mistakes were not uncommon—but Cadinha and the chef "yelled at" her, "disrespected" her, "abused" her, and told her that she was crazy and that they did not care about her. *Id.* According to Belete, "[t]he other waitresses are afraid to act as witnesses because they fear losing their jobs." *Id.* Belete filed the

3

administrative charge in an effort "to restore [her] honest name and get [her] job back." *Id.*

### C. Parties' Arguments

Defendants move to dismiss Belete's fifth, sixth, and seventh claims, for wrongful termination in violation of public policy, intentional infliction of emotional distress, and defamation. *See* Mot. (dkt. 7) at 2. According to Defendants, those claims are barred by applicable statutes of limitations, which allow only two years to bring claims for wrongful termination and intentional infliction of emotional distress, and only one year to bring a claim for defamation. *Id.* at 3–4. The alleged conduct at issue occurred during or before March of 2013, and Belete did not file this action until June of 2016—more than three years later. *Id.* at 4.

Defendants also argue that the claims at issue are not so closely related to the discrimination claims encompassed by the EEOC's investigation to be saved by the doctrine of equitable tolling. *Id.* at 5–7. Defendants cite several decisions by federal courts holding that EEOC investigations did not toll the statutes of limitations for state law tort claims, including claims for intentional infliction of emotional distress. *Id.* (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975); *Castagna v. Luceno*, 744 F.3d 254 (2d Cir. 2014); *Arnold v. United States*, 816 F.2d 1306 (9th Cir. 1987)).

Belete argues in her opposition that the claims at issue "essentially are based on the same facts relied on her [sic] for her discrimination claim." Opp'n at 2. She notes that her claim for wrongful termination in violation of public policy specifically cites FEHA's antidiscrimination provision as among the policies that were violated. *Id.* (citing Compl. ¶¶ 31–32). Belete also contends that her claim for intentional infliction of emotional distress "incorporates her allegation of sex discrimination" and alleges emotional distress deriving therefrom, and that her defamation claim is based on statements that Cadinha made on the day he fired Belete. *Id.* at 2–3. Belete argues that a complaint should not be dismissed at the pleading stage based on statutes of limitations unless a court can "'determine with certainty'" from the allegations of the complaint that the plaintiff cannot successfully invoke a tolling doctrine. *Id.* at 3–4 (quoting *Supermail Cargo, Inc. v. Unites States*, 68 F.3d 1204, 1207 (9th Cir. 1995)).

Belete contends that equitable tolling should apply here because Defendants received

timely notice of her administrative charge, her claims here are based on "'essentially the same set of facts'" as the discrimination claim set forth in the administrative charge, Defendants have identified no prejudice as a result of the delay, and Belete acted reasonably in waiting to bring all her claims together after the EEOC concluded its investigation. *Id.* at 6–8 (quoting *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 925 (1983)). Belete's opposition does not identify any case where a court found that EEOC proceedings served to equitably toll the sort of tort claims at issue here.

In their reply, Defendants argue that the cases on which Belete relies are not applicable here because they dealt with subsequent claims much more similar to those brought earlier, such as state law antidiscrimination claims tolled by an earlier EEOC investigation of "identical facts and charges" as a potential violation of Title VII. Reply (dkt. 13) at 3–4 (quoting *Downs v. Dep't of Water & Power*, 58 Cal. App. 4th 1093, 1098, 1102 (1997)) (emphasis omitted). Defendants set forth the elements of claims for intentional infliction of emotional distress and for defamation under California law, and contend that the EEOC administrative charge did not put Defendants on notice of such theories or give them reason to conduct an investigation sufficient to defend against such claims. *Id.* at 4–6. According to Defendants, the cases cited in their motion control the outcome here, and Belete could not have reasonably believed that the administrative proceedings she initiated in 2013 would resolve tort claims that were not included therein. *Id.* at 6–7.

### III. ANALYSIS

#### A. Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

The present motion turns on whether certain of Belete's claims are barred by statutes of limitations, and specifically whether the doctrine of equitable tolling applies here to extend the limitations period for those claims.

If the expiration of the applicable statute of limitations is apparent from the face of the complaint, the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). This is true even though expiration of the limitations period is an affirmative defense, because Rule 9(f) of the Federal Rules of Civil Procedure "makes averments of time and place material for the purposes of testing the sufficiency of a complaint." *Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 204 (9th Cir. 1950). When a motion to dismiss is based on the running of the statute of limitations, "it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon*, 614 F.2d at 682. In contrast, where the statute of limitations question turns on factual issues that may be disputed, the question is more appropriately addressed at a later stage of the proceeding. *See id.*

California's equitable tolling doctrine provides that a "plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy these factors: 1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993); *see also Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1139−42 (9th Cir. 2001) (reaffirming the test stated in *Cervantes* and that decision's holding that no threshold test is appropriate); *McDonald v. Antelope Valley Cmty. College Dist.*, 45 Cal. 4th 88, 102 (2008). The second element, lack of prejudice in gathering evidence, is particularly significant. *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 & n.5 (1983); *see also Daviton*, 241 F.3d at 1137 (describing *Collier* with approval as "the most oft-quoted formulation of California's law"). The similarity of the claims is relevant to that element, and courts must examine "whether the facts of the two claims are 'at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second.'" *Cervantes*, 5 F.3d at 1276 (quoting *Collier*, 142 Cal. App. 3d at 925). Courts may not, however, bypass the three-part test entirely and dismiss based on only a "threshold inquiry" of similarity. *Id.* at 1275−76.

"California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation," but dismissal can nevertheless be warranted on the pleadings where some fact apparent from the face of the complaint demonstrates that equitable tolling does not apply to an otherwise time barred claim. *Id.* at 1276−77. One such circumstance, although described by the Ninth Circuit as "unusual," is where a plaintiff's "federal 'discrimination' claim [is] so obviously distinct from her state-law 'personal injury' claims" that she cannot meet the three-part test set forth above. *Id.* at 1276−77 & n.4 (discussing *Arnold v. United States*, 816 F.2d 1306, 1312−13 (9th Cir. 1987)). Along the same lines, applying the prejudice portion of the three-part test leads to the conclusion that "the same wrong [must] serve as the predicate for the earlier and later proceedings to make sure defendant received proper notice." *Daviton*, 241 F.3d at 1141.

### B. Timely Notice of Original Claim

The first element of equitable tolling is whether the defendants received timely notice of the original claim. *See, e.g.*, *id.* at 1137 (quoting *Collier*, 142 Cal. App. 3d at 924). The parties have raised no dispute—and there certainly nothing on the face of the Complaint which negates—that Defendants here received timely notice of Belete's administrative charge, which she filed later the same year as the events at issue. *See* Compl. ¶ 8; Opp'n Ex. A. Defendants argue that the administrative charge did not give them notice of the *tort claims* at issue here, Reply at 3, but the first element looks primarily to whether the plaintiff "filed the *first* claim within the statutory period" and whether the defendants to the second claim received notice of the first.[3] *See Daviton*, 5 F.3d at 1138 (discussing *Collier*, 142 Cal. App. 3d at 924) (emphasis added). The extent to which the administrative action put Defendants on notice of the claims at issue here is better discussed in the context of the second element. *See Cervantes*, 5 F.3d at 1276. The Court therefore finds no grounds to dismiss Belete's claims based on the first element of the test.

### C. Prejudice to Defendants' Preparation of Their Defense

The second element, prejudice to the defendants' preparation, encompasses the question of how similar the new claims are to the claims previously asserted. *Id.* Although this inquiry can be fact intensive and thus in some cases premature at the pleading stage, the Ninth Circuit has held that, when apparent on the face of the complaint, sufficiently "distinct" claims in the first and second action can warrant dismissal on the pleadings because the defendant had no reason to investigate the claims of the second action and was therefore prejudiced. *Id.* at 1276−77 & n.4; *Arnold*, 816 F.2d at 1312−13; *see also Daviton*, 241 F.3d at 1141 ("As the courts have explained for years, the equitable tolling doctrine requires that the same wrong serve as the predicate for the earlier and later proceedings to make sure defendant received proper notice.").

This Order applies this test to each of the claims at issue in turn.

---

[3] There may be some question as to whether Cadinha, who was not named as a party to the administrative charge, received adequate notice to warrant equitable tolling of claims against him. Defendants have raised no such argument, and the Court finds that question inappropriate for resolution on the pleadings.

### 1. Wrongful Termination in Violation of Public Policy

Although the Court is aware of no authority directly on point, it is difficult to see how Belete's claim for wrongful termination in violation of public policy is so different from her Title VII and FEHA claims that Defendants would not have had reason to gather evidence to defend against it after being put on notice of those claims by the administrative charge. Indeed, one of the sources of policy that Belete cites to support that claim is *FEHA itself*. *See* Compl. ¶ 31; *see also Rope v. Auto-Chlor Sys. of Wash., Inc.*, 220 Cal. App. 4th 635, 660 (2013) ("FEHA's policy prohibiting disability discrimination in employment is sufficiently substantial and fundamental to support a claim for wrongful termination in violation of public policy."), *superseded by statute on other grounds as discussed in Moore v. Regents of the Univ. of California*, 248 Cal. App. 4th 216, 245 (2016) (addressing amendments to FEHA's anti-retaliation provisions). Nor is there any material difference among the anti-sex-discrimination policies underlying FEHA, the section of the California Constitution also cited in Belete's present Complaint, and the Title VII provisions at issue in the EEOC investigation on which Belete relies for equitable tolling. *See, e.g.*, *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000) (noting that California courts look to Title VII precedent in interpreting FEHA due to the substantial overlap between the statutes). Moreover, to the extent that this element of the test "requires that the same wrong serve as the predicate for the earlier and later proceedings," *see Daviton*, 241 F.3d at 1141, the wrong at issue in both claims here is identical: wrongful termination based on sex.

Defendants raise no specific argument as to how they were prejudiced by Belete waiting until after the EEOC investigation ended to bring her common law wrongful termination claim. In fact, Defendants all but concede this point in their reply brief, which focuses on Belete's emotional distress and defamation claims but virtually ignores the wrongful termination claim. *See* Reply at 4−5 (arguing that Belete "does not provide any explanation as to how her claims for intentional infliction of emotional distress and defamation are the same as her claim for sexual discrimination or harassment," and going on to lay out the elements of only emotional distress and defamation claims).

At least at the pleading stage, the Court finds no apparent prejudice to Defendants'

1  preparation that warrants dismissing Belete's claim for wrongful termination in violation of public
2  policy.

### 2. Intentional Infliction of Emotional Distress

In a vacuum, Belete's claim for intentional infliction of emotional distress might present a closer call. As Defendants correctly note, the elements of such a claim are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009); *see also* Reply at 4−5. One could reasonably argue that such a claim overlaps significantly with a Title VII harassment claim, the standards for which "are sufficiently demanding to ensure that Title VII does not become a 'general civility code,'" and require "conduct [to] be extreme" in order to support a claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). That is particularly true where, as here, essentially the same conduct forms the basis for both Belete's Title VII harassment claim and her claim for intentional infliction of emotional distress. Although Defendants lay out the elements of an intentional infliction of emotional distress claim in their brief, they do not identify any potentially relevant evidence that would not have been discovered in a diligent investigation of the Title VII claims at issue in the EEOC investigation. *See* Reply at 4−5.

Unlike the wrongful termination claim discussed above, however, the Court does not find itself in a vacuum with respect to precedent on this issue. In *Arnold*, the plaintiff Joanna Arnold alleged that her supervisor at the United States Postal Service sexually assaulted her and made inappropriate advances. 816 F.2d at 1307−08. She filed a formal complaint for discrimination and harassment with an Equal Employment Opportunity officer, within the applicable statute of limitations. *Id.* The EEOC ultimately ruled against her as to aspects of her claim, and Arnold appealed to the district court and added state law tort claims—including a claim for intentional infliction of emotional distress—outside the normal statute of limitations for such claims. *Id.* at 1308, 1312. Arnold asserted equitable tolling, but the Ninth Circuit held that "the wrong

underlying Arnold's Title VII claim is distinct from that underlying her state-law tort claims," because "[i]n her state-law claims Arnold seeks to vindicate not her right to be free from discrimination in the workplace, but rather her right to be free from 'bodily or emotional injury caused by another person.'" *Id.* at 1312−13 (quoting *Otto v. Heckler*, 781 F.2d 754, 756 (9th Cir. 1986)). The Ninth Circuit therefore determined that Arnold was not entitled to equitable tolling of her tort claims, including her claim for intentional infliction of emotional distress, and affirmed the dismissal of those claims. *Id.* at 1313.

Although there is some tension between the structure of the Ninth Circuit's analysis in *Arnold* and its later discussion of a "mandatory," "fact-intensive" three-step test for equitable tolling under California law, *see Cervantes*, 5 F.3d at 1276−77, *Arnold* nevertheless remains good law. *See id.* at 1276−77 & n.4 (describing *Arnold* as an "unusual" case, but consistent with the three-step analysis because facts evident from the complaint "supported the conclusion that the plaintiff could not prevail, as a matter of law, on the equitable tolling issue," specifically that Arnold's "federal 'discrimination' claim was so obviously distinct from her state-law 'personal injury' claims."). The rule that "the equitable tolling doctrine requires that the same wrong serve as the predicate for the earlier and later proceedings" also remains valid. *Daviton*, 241 F.3d at 1141.

Belete's opposition brief does not attempt to distinguish, or even mention, *Arnold*. *See generally* Opp'n.[4] The Court finds that case to binding and directly on point, and therefore holds as a matter of law that the EEOC investigation in this case was not sufficiently similar to Belete's claim for intentional infliction of emotional distress to cause Defendants to investigate and prepare

---

[4] At the hearing, Belete's counsel suggested that *Arnold* is distinguishable because the tolling argument there rested only on Title VII claims, and not, as here, also on FEHA claims. The Court is not persuaded that the distinction is relevant. Even if it were, however, Belete received a right-to-sue letter for her FEHA claims on November 5, 2013. *See* Compl. Ex. A. The time to bring the FEHA claims themselves was tolled during the EEOC's Title VII investigation by section 12965(d)(1) of the California Government Code, but her FEHA claims were not the subject of any ongoing proceeding after that date. Thus, even if administrative proceedings regarding FEHA claims tolled the statute of limitations period for Belete's intentional infliction of emotional distress claim, any such tolling would have ended on November 5, 2013. The statute of limitations would have expired in November of 2015—well before Belete filed the present action.

11

an adequate defense for the latter claim. This claim must therefore be DISMISSED.[5]

### 3. Defamation

If Belete's claim for intentional infliction of emotional distress cannot stand, her claim for defamation must fall as well. "The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Sanders v. Walsh*, 219 Cal. App. 4th 855, 862 (2013) (quoting *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010)). Such a claim has little if anything inherently in common with a Title VII discrimination claim. Here, Belete argues that Cadinha defamed her in front of her coworkers by calling her a "thief" and stating that she stole orders from other servers. *See* Opp'n at 2−3; Compl. ¶ 39. Nothing in Belete's administrative charge indicates that Cadinha made such statements, that such statements were false, that Cadinha spoke poorly of Belete in front of her coworkers,[6] or, to sum up, that Belete intended to bring a claim based on defamation. *See* Opp'n Ex. A. Moreover, the wrong underlying a defamation claim—injury to reputation—is distinct from "her right to be free of discrimination in the workplace." *See Arnold*, 816 F.2d at 1313; *see also Daviton*, 241 F.3d at 1141 ("[T]he equitable tolling doctrine requires that the same wrong serve as the predicate for the earlier and later proceedings . . . .").

Belete cites no authority holding that an EEOC discrimination investigation can serve to toll the statute of limitations for a defamation claim. Because Belete's "federal 'discrimination' claim was so obviously distinct from her state-law [defamation] claim[]," *see Cervantes*, 5 F.3d at 1277 n.4, the Court holds as a matter of law that Defendants would not reasonably have investigated evidence related to defamation after receiving notice of the EEOC proceeding, and

---

[5] "Emotional distress damages . . . may be available when an employee is subject to unlawful harassment under the FEHA." *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 234 (2013) (citing *Rehmani v. Superior Court* 204 Cal. App. 4th 945, 958−59 (2012)); *see also Taylor v. Nabors Drilling USA, LP*, 222 Cal. App. 4th 1228, 1247 ("'[P]roof of the elements of the tort of intentional infliction of emotional distress is not a prerequisite for the recovery of compensatory damages [under the FEHA] for mental anguish and humiliation.'" (quoting *Stephens v. Coldwell Banker Commercial Grp., Inc.*, 199 Cal. App. 3d 1394, 1403 (1988) (alterations in original)). This Order has no effect on any ability that Belete may have to recover emotional distress damages through her surviving claims.

[6] Except perhaps the chef, whom the administrative charge portrays as complicit in Belete's mistreatment. *See* Opp'n Ex. A.

thus DISMISSES this claim.

### D.  Good Faith

With respect to Belete's surviving claim for wrongful termination in violation of public policy, the Court finds no reason to hold at the pleading stage that Belete acted in bad faith by failing to bring that claim until after the EEOC completed its investigation. Belete may well have believed in good faith that the statute of limitations for that claim was tolled, that Defendants would not be prejudiced by her bringing it together with her Title VII and FEHA claims, and that such a course of action would in fact promote an efficient resolution of her dispute with Defendants. The Court therefore holds that this third element of the equitable tolling test provides no basis to dismiss that claim.

### E.  *Castagna v. Luceno*

Defendants' briefs and oral argument relied in significant part on the Second Circuit's holding "that filing an EEOC charge does not toll the limitations period for state-law tort claims," which that court characterized as in accord with Ninth Circuit law. *See Castagna v. Luceno*, 744 F.3d 254, 255, 257−59 (2d Cir. 2014). That case, however, considered only the question of whether federal policy independent of state law required tolling the limitations period of state tort claims during EEOC investigations. *See id.* at 257 ("In short, Castagna's position is that judicial efficiency mandates tolling of the relevant statutes of limitations for state tort claims once a charge of discrimination is filed with the EEOC."). On that point, the holding of *Castagna* is indeed consistent with Ninth Circuit precedent, *see Arnold*, 816 F.2d at 1313 ("Nor does federal policy mandate equitable tolling."), and with the Supreme Court's holding in *Johnson v. Railway Express Agency*, 421 U.S. 454, 465−67 (1975) (holding that no federal law or policy tolled the statute of limitations for a claim under 42 U.S.C. § 1981 during an EEOC investigation under Title VII). But the Second Circuit had no occasion to consider California's equitable tolling doctrine: to the extent that *any* state tolling doctrine could have applied—in that case under New York law—the court held that the plaintiff waived such arguments by failing to present them to the trial court. *Id.* at 258−59.

Because Belete's argument for tolling here rests entirely on California's equitable tolling

doctrine, not on some independent federal policy of judicial efficiency, *Castagna* has no bearing on this case.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion is GRANTED IN PART, and Belete's sixth and seventh claims, for intentional infliction of emotional distress and defamation, are hereby DISMISSED. At the hearing, Belete's counsel conceded that no doctrine besides equitable tolling would extend the statute of limitations for those claims. The Court therefore finds that amendment would be futile and dismisses Belete's sixth and seventh claims with prejudice. Belete may proceed on her claim for wrongful termination in violation of public policy, as well as her Title VII and FEHA claims not at issue in the present motion.

**IT IS SO ORDERED.**

Dated: October 28, 2016

JOSEPH C. SPERO
Chief Magistrate Judge